J-A21041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.C.K.S., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.S., MOTHER | : : : : : : : | |
| | : | No. 1355 EDA 2022 |

Appeal from the Order Entered April 22, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001581-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: K.-C.K.S., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.S., MOTHER | : : : : : : : | |
| | : | No. 1356 EDA 2022 |

Appeal from the Decree Entered April 22, 2022
In the Court of Common Pleas of Philadelphia County Family Court
Division at No(s): CP-51-AP-0000535-2021

BEFORE: LAZARUS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED OCTOBER 28, 2022**

K.S. (Mother) appeals from the decree entered April 22, 2022, in the Philadelphia County Court of Common Pleas, involuntarily terminating her parental rights to her son K.C.K.S. (Child), born in June 2015.[1] Mother also

---

[1] On April 22, 2022, the trial court also terminated the parental rights of J.W. ("Father") and any unknown putative father. At this time, only Mother filed an appeal.

appeals from the April 22, 2022, order related to Child's dependency case, which changed his permanency goal from reunification to adoption. After careful review, we affirm the termination decree and dismiss the appeal from the goal change order as moot.

On October 3, 2019, the Department of Human Services (DHS) received a General Protective Services (GPS) report alleging Mother was verbally abusive to Child and hit him in the chest with a blue plastic baseball bat. *See* N.T., 4/22/22, at 9-10. The report also indicated that Mother had sex with a paramour while Child was in the room. *Id.* at 10. During this incident, another woman was in the room doing drugs and Child reported touching the woman's private parts. *Id.* Finally, the report stated that Mother severely struggles with her mental health and that she abuses phencyclidine (PCP). *Id.*

Accordingly, DHS obtained an order of protective custody (OPC) for Child. On October 4, 2019, at a shelter care hearing, the trial court lifted the OPC and ordered the temporary commitment to DHS to stand. On October 25, 2019, the court adjudicated Child dependent, who was then four years old. On the same day, the court entered an aggravated circumstances order because Mother previously had her parental rights terminated to four of her other children. *See* Aggravated Circumstances Order, 10/25/19, at 1.

DHS provided Mother with single case plan (SCP) objectives: 1) attend Achieving Reunification Center (ARC) for parenting and employment classes;

2) attend the Clinical Evaluation Unit (CEU) for a forthwith drug screen, an assessment, and three random drug screens; 3) participate in a mental health evaluation at Behavioral Health Services (BHS); and 4) attend supervised visits with Child. *See* N.T. at 13.

During the pendency of the case, Mother did not comply with these objectives. Mother did not make any progress towards alleviating the circumstances that brought Child into the custody of DHS. *See* N.T. at 16-17. CUA made numerous referrals on behalf of Mother, but Mother never availed herself of the ARC classes, CEU assessment, drug and alcohol treatment, drug screens, or the BHS mental health evaluation. *Id.* at 13-16. Additionally, Mother was inconsistent with visitation, and on July 21, 2021, at the conclusion of a permanency review hearing, the trial court suspended her visitation.[2] *Id.* at 15-16. Her visits were suspended because Mother repeatedly tried to leave the facility with Child and told Child, without further specification in the record, to touch younger girls inappropriately. *Id.* at 15.

On September 21, 2021, DHS filed a petition for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b), and a separate petition to change Child's permanency

---

[2] Mother appealed the trial court's order suspending her visitation. This Court affirmed the order on January 5, 2022, because Mother posed a "grave threat" to Child and no other therapeutic intervention or other support would protect Child from Mother. *In the Interest of K.C.K.S.*, 1688 EDA 2021 (Pa. Super. Jan. 5, 2022) (unpub. memo.). Mother's visitation remained suspended through the termination of her parental rights on April 22, 2022.

goal from reunification to adoption. The trial court conducted an evidentiary hearing on April 22, 2022. At this time, Child was six years old and was represented by a guardian *ad litem* ("GAL") and separate legal counsel. Mother was represented by counsel and testified. DHS presented the testimony of CUA case manager, Rochelle Richards.

At the conclusion of the April 22nd hearing, the trial court granted DHS's petitions to terminate Mother's parental rights pursuant to Sections 2511(a)(1), (2), (5), (8), and (b), and change Child's permanency goal to adoption. Mother filed timely notices of appeal and Pa.R.A.P. 1925(a)(2)(i) concise statements of errors complained of on appeal. The trial court filed a Rule 1925(a) opinion on June 13, 2022. This Court consolidated Mother's appeals *sua sponte* on June 16, 2022.

On appeal, Mother presents the following issues for review:

1. Did the trial court err as a matter of law and abuse its discretion by involuntarily terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a) in the absence of clear and convincing evidence that Mother was unfit or unwilling to perform parental duties?

2. Did the trial court err as a matter of law and abuse its discretion by involuntarily terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a) and 2511(b) in the absence of clear and convincing that termination of Mother's parental rights would best serve the needs and welfare of [Child]?

3. Did the trial court err as a matter of law and abuse its discretion by terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(b) in the absence of clear and convincing evidence that termination would best serve the needs and welfare of Child?

- 4 -

4. Did the trial court commit an error of law and abuse of discretion in terminating [Mother's] parental rights and changing [Child's] goal to adoption, where the trial court caused the deteriorated bonds between [Mother] and [Child] by suspending her visits with [Child] several months prior to the goal change/termination of parental rights hearing?

Mother's Brief at 3.[3]

We review an appeal from an order terminating parental rights with the following deference to the trial court's determination:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. [A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act governs involuntary termination of parental rights. *See* 23 Pa.C.S. § 2511. It requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence

---

[3] Legal counsel for Child filed a letter joining DHS's brief in support of terminating Mother's parental rights and changing Child's permanency goal to adoption. We note, with disapproval, that Child's GAL did not a file a brief or letter in this appeal.

- 5 -

that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

The trial court terminated Mother's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b).[4] Here, we analyze the court's termination decrees pursuant to Section 2511(a)(8) and (b), which provide as follows:

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant

---

[4] In order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(8), (b).

To satisfy Section 2511(a)(8), the petitioner must show three components: (1) that the child has been removed from the care of the parent for at least 12 months; (2) that the conditions which led to the removal or placement of the child still exist; and (3) that termination of parental rights would best serve the needs and welfare of the child. *In re Adoption of J.N.M.*, 177 A.3d 937, 943 (Pa. Super. 2018).

Unlike other subsections, Section 2511(a)(8) does not require the court to evaluate a parent's willingness or ability to remedy the conditions that led to the placement of the children. *In re M.A.B.*, 166 A.3d 434, 446 (Pa. Super. 2017). "[T]he relevant inquiry" regarding the second prong of Section 2511(a)(8) "is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa. Super. 2009). Further, the Adoption Act prohibits the court from considering, as part of the Section 2511(a)(8) analysis, "any efforts by the parent to remedy the conditions described [in the petition] which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S. § 2511(b).

We observe that Sections 2511(a)(8) and (b) both require a court considering a termination petition to assess the needs and welfare of the

relevant child or children. However, the needs and welfare analysis required by Section 2511(a)(8) is distinct from the needs and welfare analysis required by Section 2511(b), and must be addressed separately. *See In re C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*).

This Court has recognized "that the application of [Section 2511(a)(8)] may seem harsh when the parent has begun to make progress toward resolving the problems that had led to the removal of her children." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

> However, by allowing for termination when the conditions that led to removal of a child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit [18] months, in which to complete the process of either reunification or adoption for a child who has been placed in foster care.

*Id*. (citations omitted).

With respect to subsection 2511(b), we consider whether termination of parental rights will best serve the Children's developmental, physical and emotional needs, and welfare. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *Id.* "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted,

upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." ***In re B., N.M.***, 856 A.2d 847, 856 (Pa. Super. 2004) (citation omitted).

"When conducting a bonding analysis, the court is not required to use expert testimony. [Instead, s]ocial workers and caseworkers can offer evaluations as well." ***In re Z.P.***, 994 A.2d at 1121 (citations omitted). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into needs and welfare of the child." ***In re N.A.M.***, 33 A.3d 95, 103 (Pa. Super. 2011) (quotation marks omitted. "Above all else . . . adequate consideration must be given to the needs and welfare of the child. A parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights." ***In re Z.P.***, 994 A.2d at 1121 (citations and quotation marks omitted).

In her first issue, Mother argues that the trial court abused its discretion by involuntarily terminating Mother's parental rights under 23 Pa.C.S. § 2511(a) because DHS failed to present clear and convincing evidence. ***See*** Mother's Brief at 7. Specifically, regarding Section 2511(a)(8), Mother posits that DHS did not prove that the conditions that contributed to Child's placement continue to exist and cannot or will not be remedied by Mother within a reasonable period of time. ***Id.*** at 12. Mother argues that she attempted to complete her SCP objectives. ***Id.*** at 13. She baldly asserts that

she reached out to CUA case manager, Ms. Richards, for assistance, but Mother did not receive the requested support. *Id.* Without support from CUA, Mother contends that it was impossible for the trial court to determine if the conditions that contributed to Child's placement could be remedied in a reasonable time. *Id.* Mother's argument is belied by the record.

In its opinion, the trial court aptly stated,

> Throughout the life of the case, Mother has been ordered to the CEU for an assessment and to submit random drug screens. She was also ordered to BHS for a mental health evaluation and to ARC for parenting classes. Since the Child was adjudicated, Mother has not engaged in any of her single case plan objectives. Additionally, Mother failed to visit Child consistently, and her visits were eventually suspended due to her behavior and the effect on the Child when she did attend. (Trial Ct. Order 10/28/20 at 1 (stating that Mother had missed 42 visits with Child). . . . Moreover, the CUA [c]ase [m]anager testified that Mother has not met any of the Child's needs since he was removed from her care, and that she has not remedied any of the issues that led to the Child's placement.

Trial Ct. Op., 6/13/22, at 12 (some record citations omitted).

A careful review of the record supports the trial court's findings. Primarily, at the time of the termination hearing, Child had been in the care of DHS for over thirty months. Regarding the second factor of Section 2511(a)(8), Child was placed with DHS due to physical and emotional abuse, concerns over Mother's mental health, and Mother's drug use. As related *supra*, Mother did not avail herself of any of the referred resources. Mother's argument relies on a passing reference that she informed Ms. Richardson that she was unable to participate in ARC classes electronically. N.T. at 29-31.

Mother also stated that after her home was burglarized, she asked Ms. Richardson for help, but CUA could not provide assistance because Child did not reside with her. *Id.*

Ms. Richardson testified that multiple referrals were made on behalf of Mother to ARC, CEU, and BHS, but Mother never participated in any of these programs. N.T. at 13-16. BHS told Ms. Richardson that they did not want to work with Mother due to her aggressive behavior, but Ms. Richardson referred Mother again. *Id.* at 14-15. Subsequently, Mother arrived late for her appointment and then attacked the guards because they would not let her in the closed courthouse. *Id.*

Mother was also inconsistent with visitation, and when Mother did visit, she told Child to disobey his caregivers and to touch the younger girls inappropriately at his daycare. N.T. at 15. Additionally, Mother frequently attempted to remove Child from the visitation facility. *Id.* at 15, 24. Ultimately, as set forth above, in July 2021, the trial court suspended visitation, which remained suspended through the termination of Mother's parental rights. *Id.* at 15-16. Furthermore, Mother testified that because her house was burglarized, her home was no longer appropriate for Child until repairs were made. *Id.* at 16, 30-31. Thus, the trial court was well within its discretion to find that the conditions which led to the removal or placement of Children still exist and reunification was not imminent.

In her brief's second issue, Mother combines the analysis of the third factor in Section 2511(a)(8) with Section 2511(b), but as referenced *supra*, the needs and welfare analysis required by Section 2511(a)(8) is distinct from the needs and welfare analysis required by Section 2511(b) and must be addressed separately. *See In re C.L.G*., 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). Accordingly, we address the third factor of Section 2511(a)(8) first.

The trial court correctly determined that termination would best serve the needs and welfare of Child. Ms. Richardson testified that Child has a close relationship with his resource parent who provides him with love, safety, stability, and support. N.T. at 21. Ms. Richardson also testified that Child receives specialized services, and the resource parent is very engaged in ensuring that Child receives all necessary services. *Id.* at 22. Child calls the resource parent "mommy" and has stated that he wants "my mommy to be my mommy." *Id.* at 23, 26. In contrast, Ms. Richardson stated that, Mother does not meet any of Child's needs and Child would not suffer irreparable harm if the trial court terminated Mother's parental rights. *Id.* at 22-23.

Based on the foregoing testimony, the trial court was well within its discretion to terminate Mother's parental rights under Section 2511(a)(8) because: (1) Child has been removed from Mother's care far in excess of the 12-month statutory minimum; (2) the conditions which led to Child's removal

continue to exist; and (3) termination would best serve the needs and welfare of Child.

In Mother's second issue, she argues that the trial court abused its discretion by involuntarily terminating her parental rights under Section 2511(b) where DHS failed to prove by clear and convincing evidence that terminating Mother's rights would best service the emotional needs and welfare of Child. *See* Mother's Brief at 13. Mother argues that the trial court failed to consider the parent-child bond between Mother and Child, specifically when the trial court, at the termination hearing, stated that "[i]t's clear to me that [Mother] loves [Child]." Mother's Brief at 15-16; N.T. at 37. Mother further contends that evidence of Child's bond with the resource parent is unreliable because legal counsel hired a social worker to speak with Child on his behalf and Ms. Richardson stated that Child did not specifically indicate that he wants to be "adopted." Mother's Brief at 16.

At the close of the termination hearing, the trial court indicated that it is clear that Mother loves Child, but "[u]nfortunatley, loving your child isn't enough sometimes. You have to be able to meet your child's needs both emotionally, mentally, [and] physically." N.T. at 37. In its opinion, the trial court determined that "termination is in the best interest of the Child as he has established a strong parent-child bond with his kinship caregiver who has provided the Child with consistent love, safety, stability, and support." Trial Ct. Op. at 13.

The record confirms the trial court's findings. Mother's argument that the trial court did not consider the bond she shared with Child is unsupported by the record. The trial court explicitly acknowledges at the close of the termination hearing that Mother loves Child, but that love is not enough. N.T. at 37. As related **supra**, "[a]bove all else . . . adequate consideration must be given to the needs and welfare of the child. A parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights." **In re Z.P.**, 994 A.2d at 1121 (citations and quotation marks omitted).

Further, the trial court heard testimony from Ms. Richardson that Mother influenced Child in a negative manner whenever she visited. **See** N.T. at 15-16. Additionally, Ms. Richardson testified that Child does not want to see Mother. **Id.** at 23. Ms. Richardson further stated that Child would not suffer irreparable harm if Mother's parental rights were terminated, and that it would be in Child's best interest for Mother's rights to be terminated. **Id.** at 21-23.

Finally, although Child, who was six years old at the time of the termination hearing, did not specifically state that he wants to be "adopted," he informed Ms. Richardson that he wants the resource parent to be his "mommy." N.T. at 23. Legal counsel confirmed Child's desire to be adopted.[5] N.T. at 35-36. Therefore, Mother's second issue fails, and the trial court did not abuse its discretion in determining that termination best serves Child's

---

[5] Legal counsel did not speak with Child directly. Counsel contracted with a social worker, Roya Paller, to speak with Child on his behalf. N.T. at 35-36.

developmental, physical, and emotional needs and welfare pursuant to Section 2511(b).

In her third issue, Mother argues that the trial court abused its discretion by changing Child's permanency goal from reunification to adoption where DHS failed to provide sufficient evidence that a goal change would best suit Child's needs and welfare. *See* Mother's Brief at 16. Given our disposition affirming the termination decree, Mother's argument pertaining to the order is moot. Therefore, we do not review it. *See In the Interest of D.R.-W.*, 227 A.3d 905, 917 (Pa. Super. 2020) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.") (citation omitted).

In Mother's final issue, she argues that the trial court abused its discretion in terminating her parental rights and changing Child's goal to adoption where the trial court caused the bond between Mother and Child to deteriorate by suspending visitation several months prior to the termination/goal change hearing. *See* Mother's Brief at 18. Mother argues that the termination of Mother's parental rights should be reversed because the suspension of her visitation directly impacted the bond between her and Child. *Id.*

Mother's argument is without merit because a panel of this Court affirmed the suspension order. *See In the Interest of K.C.K.S., supra*. Therefore, that order is not before us. Further, Mother's argument indicates

that she still fails to take responsibility for her actions as the trial court did not arbitrarily decide to suspend her visitation. Indeed, Mother caused her visitation to be suspended and any subsequent deterioration of her bond with Child based on that suspension. Accordingly, Mother's final issue is without merit.

Based on the foregoing, we affirm the decree terminating Mother's parental rights and dismiss as moot Mother's appeal of the order changing Child's permanency goal to adoption.

Termination decree affirmed. Appeal from goal change order dismissed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/28/2022